Filed 6/15/16; part. pub. & mod. order 7/12/16  (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANNE H.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL B.,<br><br>    Defendant and Respondent. | A146610<br><br>(San Mateo County<br>Super. Ct. No. 120660) |

In August 2014, the family court entered a permanent custody order granting joint custody of L., the daughter of appellant Anne H. (Mother) and respondent Michael B. (Father).  Under the order, Father, a Bay Area resident, was awarded physical custody of L. during school years, while Mother was awarded physical custody at her home in Virginia during the summers.  In making the order, the family court stated that one of the primary considerations in granting Father custody during the school year was the presence of Mother's family members in the Bay Area, which provided Mother a place to stay while visiting L. and allowed Mother's family to share in L.'s care.  The court's order noted the relocation of Mother's family members from the Bay Area, among several other factors, would be changed circumstances "requiring a new analysis of the ongoing custodial timeshare between the parties."

Less than a year later, Mother filed a request to modify the custody order, claiming her parents had relocated to Virginia and arguing, pursuant to the custody order, the relocation should be regarded as changed circumstances requiring a reexamination of L.'s best interests and a grant to Mother of school-year custody.  The request was heard by a

different judge than the judge who had entered the custody order. Without explanation, that judge denied Mother's request to modify the custody order, finding no changed circumstances, and granted sanctions to Father under Family Code section 271 in the amount of $5,000.

Upon Mother's appeal of these rulings, we conclude the statement in the custody order specifying changed circumstances requiring a reconsideration of custody arrangements was not binding on subsequent judges. Finding no abuse of discretion in the second judge's conclusion that Mother had failed to demonstrate changed circumstances, we affirm the denial of her request for modification. We also find no abuse of discretion in the court's award of financial sanctions.

## I. BACKGROUND

At the time of L.'s birth in 2009, Mother and Father were unmarried members of the armed services. Within a year after the birth, Father left the service, moved into Mother's home in the Bay Area, where she was attending law school as a member of the military, and began attending graduate school himself. Father eventually finished school and found a job in the Bay Area. During this time, each parent spent occasional, relatively brief periods away from the home, leaving L. in the sole care of the other parent, assisted by members of Mother's family, particularly her parents and sister. In August 2012, after completing law school, Mother was posted to Georgia. Mother and Father agreed that L. would remain with Father on a temporary basis, while they worked toward a more permanent custody arrangement.

Father filed a petition in Santa Clara County Superior Court to gain full custody of L. in February 2013. Mother thereafter filed this paternity action in San Mateo County, and the parties stipulated to dismiss Father's action. Eventually, following a three-day trial, Judge Richard DuBois issued a 20-page statement of decision (custody order) in August 2014, awarding the parents joint custody over L. and requiring her to spend the academic year with Father and the summer months with Mother. In reaching his decision, Judge DuBois found it significant that Mother's parents and sister lived in the Bay Area, which provided Mother a place to stay during visits with L., allowed her more

2

" 'real time' " with L. during visits, and permitted her family members to participate in L.'s life while L. was living with Father. Unlike Mother in the Bay Area, Father had no friends or relatives in the places to which Mother was likely to be posted, making his visits comparatively more difficult and reducing the free time he could spend with L. during visits. The court noted that residence in the Bay Area also "would provide continued stability for" L., since it had always been her home and Father had a steady job and no plans to relocate, while Mother's future was geographically uncertain, given her service. In the end, the court found the "most significant factor" in determining the custody arrangements to be the presence of Mother's family members in the Bay Area. The court concluded: "Should these circumstances change by [Father] moving out of the Bay Area, or [Mother's] family moving farther from the Bay Area, or [Mother's] family not being allowed or able to have consistent independent contact with [L.], or [Mother] relocating to the Bay Area, such a change would constitute a change of circumstance requiring a new analysis of the ongoing custodial timeshare between the parties." Neither party appealed the custody order.

Less than a year later, in May 2015, Mother filed a request for modification of the custody order (request) to grant her physical custody of L. during the school year. In a declaration filed with the request, Mother stated that since entry of the custody order she had been given a posting in Washington, D.C. that would last for "at least the next 5–6 years." Prior to taking that assignment, Mother would be required to attend a 10-month training course in Charlottesville, Virginia.[1] In addition, Mother stated her parents (grandparents), who had been closely involved in L.'s care prior to the custody dispute, had moved from the Bay Area to northern Virginia. According to Mother's declaration, the grandparents had purchased a home in Virginia located "less than 15 minutes" from her own Virginia home. Attached to the declaration was a grant deed of a parcel of

---

[1] This aspect of Mother's application did not constitute wholly changed circumstances. Judge DuBois's order anticipated that Mother would spend nearly a year in Charlottesville before assuming a more permanent post. While settling in Washington, D.C. was a possibility at that time, there were other options, including a foreign post.

3

Virginia real estate to the grandparents and Mother's brother. Mother characterized the grandparents' relocation as "a prima facie change in circumstances" under the custody order and sought a reevaluation of L.'s best interests.

Mother also contended Father had failed to cooperate with the grandparents in allowing them access to L. in the Bay Area, but she provided no evidentiary support for the claim, other than her conclusory statement, "Despite repeated requests to resume [the grandparents'] independent visits with [L.] when she is in California, [Father] has consistently declined with excuses, or required them to spend time with her in his presence," but she provided no support for the claim. The only documentary evidence submitted in support of this claim did not, in fact, support it, and the portion of her declaration detailing Father's lack of cooperation focused entirely on his relations with Mother and contained no information suggesting Father had prevented the grandparents from spending time with L.[2]

Father opposed the request. In a declaration, he argued no significant change of circumstances had occurred because the grandparents retained ownership of their home in the Bay Area, Mother's sister continued to live in the Bay Area, and Mother "has other relatives living in [the Bay Area] with whom she stays during her visitation with [L.]." Further, according to Father, the grandparents had chosen to limit their contact with L., failing to visit with her for months despite his open invitation to do so. Father also

---

[2] In support of her claim of lack of cooperation with the grandparents, Mother submitted a printout of a chain of e-mails dating from the end of September 2014. The chain began with Father politely declining a request by the maternal grandmother to see L. the following weekend, saying he already made plans, but he offered to make L. available the following month and asked for dates when the grandparents would be free. In responding, the grandmother reiterated her request for the weekend without mentioning October or otherwise acknowledging the substance of Father's e-mail. Father again politely declined and asked for October dates. When Friday arrived, the grandmother sent a third e-mail repeating her request for the weekend without mentioning October. This time, Father offered to make L. available that afternoon but repeated he had plans for the remainder of the weekend and again offered time in October. To the extent this e-mail chain demonstrates a lack of cooperation, it rests with the grandmother.

challenged the genuineness of the grandparents' relocation, pointing out that Mother had listed the Virginia home deeded to the grandparents as her own home in a school application, and L. had stayed with the grandparents in their Bay Area home "[a]s recently as June 2015."[3]  Father claimed he continued to have only limited opportunities to visit L. when she was in Mother's custody, since he was allowed only 12 days annually of vacation and had no place to stay in Virginia, while Mother's posting permitted much more opportunity for west coast visits.  Her job permitted flexibility of scheduling; she had substantial banked leave time; and she acquired 30 additional days of leave per year.  Since the custody order went into effect, Mother had been able to spend two four-day weekends per month visiting L.  Further, Father argued, Mother would be required either to move L. to Charlottesville for the duration of the 10-month training course or commute over two hours each way, making it difficult for her to care for L. during that time.

Father's opposition also requested attorney fees in the amount of $15,867.50 as a sanction under Family Code section 271.  His declaration reiterated the procedural history of the proceedings, noting Mother had filed five ex parte applications regarding custody and visitation during the period 2013 to 2014, in addition to the request, while he had filed no pleadings seeking relief other than the initial petition.  In ruling on the last of Mother's ex parte applications in December 2014, Judge Susan Greenberg had commented with respect to the parties' squabbling:  "It's a nightmare.  I'm hoping that the parenting coordinator can resolve that for you because frankly, you guys are adults and you can deal with the stress.  But this little girl is going to have a horrible time if you continue to act this way and treat each other this way."  At the time, Judge Greenberg denied without prejudice motions for section 271 sanctions Father had filed, noting:  "I don't believe that they should be ruled on now.  I want the parties to . . . use the parenting coordinator to try and resolve their constant and continuous fighting and bickering over every single aspect of the timeshare with this little girl."

_____

[3] According to Father, Mother enrolled L. in a Virginia kindergarten program without consulting him, in violation of the custody order.  In the enrollment application, she listed the home deeded to the grandparents as her own home.

Father's opposition renewed the earlier sanctions motion. As he argued, Mother was an attorney, and therefore able to assist in the preparation of litigation documents, while he was required to rely on counsel with respect to the proceedings. He concluded, "[Mother's] refusal to accept the Court's custody orders and incessant efforts to change the Order have exhausted me not only financially, but physically and emotionally as well." Father argued Mother had the ability to pay the requested sanctions because she is employed as a judge advocate and had the resources to fund the three-day custody trial and four motions to modify the custody order in the preceding year. The requested award of $15,867.50 was based primarily on the attorney fees Father incurred in responding to the request.

In a reply declaration, Mother stated that although her sister remained in the Bay Area, the sister lived in a small apartment with her husband, making it difficult for her to support Mother's visits with L. Mother claimed to have no other relatives or friends in the Bay Area on whom she could rely for "logistical support" in visitation. Mother said she owned her own home in Virginia "approximately 20–30 minutes" from her parents' home and explained her parents leased their house in the Bay Area to college students during the academic year. Addressing Father's request for sanctions, Mother denied that she had superior financial means. According to Mother, Father's parents had financed his side of the custody litigation, while Mother had to finance her representation from her own pocket. Mother contended she had attempted to be conciliatory, but Father's "hostile and unreasonable behavior" had forced her to seek judicial relief.

At the hearing on the request, conducted by Judge Greenberg, Mother's attorney stated he had brought with him additional evidence to support the claim that the grandparents had moved, including "their utility bills and the lease of their [Bay Area] home." Those documents were never offered into evidence, however, and they are not in the appellate record. Counsel for Father argued no move had, in fact, occurred, pointing out that the grandparents had not submitted their own declarations with respect to the claim. Following argument, Judge Greenberg denied the request, stating without further explanation: ". . . I find that [Mother] has not met that burden to show the change of

6

circumstances." The judge also awarded $5,000 in sanctions, again without explanation. Her oral ruling was reflected in a subsequent written order.

## II. DISCUSSION

Mother has appealed Judge Greenberg's denial of the request and grant of sanctions, contending primarily that the denial was inconsistent with the custody order, which noted that a relocation of Mother's family members would constitute changed circumstances requiring a reconsideration of the custody arrangements.[4]

### A. *Mother's Demonstration of Changed Circumstances*

Although Family Code section 3087 states that an order of joint custody may be modified merely upon a showing that the best interest of the child requires the modification, the Supreme Court has imposed an additional requirement when, as here, a permanent custody order has been entered. "Once the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining' that custody arrangement. [Citation.] In recognition of this policy concern, we have articulated a variation on the best interest standard, known as the changed circumstance rule, that the trial court must apply when a parent seeks modification of a final judicial custody determination. [Citation.] Under the changed circumstance rule, custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest. [Citation.] Not only does this serve to protect the weighty interest in stable custody arrangements, but it also fosters judicial economy.' " (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956 (*Brown*).) The burden of

---

[4] Mother had earlier filed a petition for writ of mandate challenging the family court's order, docketed as case No. A146235. This court summarily denied the petition in an order dated October 22, 2015. The parties have relied on exhibits submitted with Mother's writ petition as the primary record in this appeal.

showing changed circumstances is on the party seeking a modification of the custody order.  (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 738.)

### 1. Significance of Judge DuBois's Statement Regarding Changed Circumstances

Mother argues Judge Greenberg's finding of no changed circumstances must be reversed because it is inconsistent with Judge DuBois's conclusion in the custody order that changed circumstances would result if Mother's family members moved from the Bay Area.  The first issue to be resolved is therefore the degree to which Judge DuBois's comment regarding potential changed circumstances controlled Judge Greenberg's consideration of the request.  For the reasons discussed below, we conclude the comment was not binding in any manner on Judge Greenberg in her determination of changed circumstances.

Mother first argues the comment became preclusive under the doctrines of res judicata and collateral estoppel when Father did not appeal the custody order.  The issue of res judicata is conclusively resolved by *In re Marriage of Rabkin* (1986) 179 Cal.App.3d 1071 (*Rabkin*).  In ruling on a motion for modification of a spousal support order, the family court in *Rabkin* granted the wife a temporary increase in spousal support when she had difficulty selling the family home, a modification specifically permitted by the couple's marital settlement agreement (MSA).  (*Id.* at pp. 1076–1077.)  Although the MSA expressly stated sale of the couple's home would not constitute a change in circumstances justifying a further motion to modify the spousal support order, the family court's order granting the temporary increase stated just the opposite, that sale of the residence would be deemed a change in circumstances entitling either party to seek modification of the support order.  (*Id.* at p. 1077.)  After the house was sold, the family court entered a new order in which it set spousal support below that provided in the MSA.  The wife appealed, contending the family court was precluded from modifying her support on the basis of the sale of the home by the language of the MSA.  (*Id.* at p. 1078.)  The husband contended, in part, that the wife was precluded from arguing sale of the home could not constitute a change in circumstances by the doctrine of res

judicata, since she did not appeal the contrary language in the court's modification order. (*Id.* at p. 1082.)  In rejecting the application of res judicata, the court noted that the doctrine only applies to issues actually before the court and necessarily decided.  (*Ibid.*)  As the court explained, the sole issue before the family court at the time of the original modification hearing was whether the wife was entitled to a temporary increase in spousal support under the MSA.  This issue, the court held, "had nothing to do with the question of whether the sale of the residence would constitute a change of circumstances for the purpose of further spousal support proceedings. . . . Thus, the statement . . . characterizing the sale of the marital residence as a change of circumstances justifying a future modification of spousal support was unnecessary to the court's decision and purely gratuitous."  (*Id.* at p. 1083.)

*Rabkin* is directly on point.  The only issue before Judge DuBois in the original hearing was current custody arrangements for L.  Necessarily, the issue of the circumstances justifying a change in those arrangements was not before Judge DuBois when he entered the custody order.  On the contrary, modification of the custody order due to changed circumstances would not be before a court unless and until Mother or Father filed an appropriate motion to modify.  Further, the issue of changed circumstances could not even arise until there had been sufficient time after entry of the custody order for circumstances to change.  Accordingly, Judge DuBois's comments about a change in circumstances were unnecessary to his decision and, pursuant to *Rabkin*, had no preclusive effect under the doctrine of res judicata.[5]

The doctrine of collateral estoppel is inapplicable for essentially the same reason. Collateral estoppel, also known as issue preclusion, "prevents relitigation of previously decided issues. . . . [I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."

---

[5] Mother merely distinguishes *Rabkin* by arguing that the circumstances relating to modification of the custody order were different, without acknowledging or addressing the decision's ruling with respect to res judicata.

(*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824–825.)  An issue is
" 'necessarily decided' " by an order if the issue was not " 'entirely unnecessary' to the
judgment in the initial proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335,
342; see *Mega RV Corp. v. HWH Corp.* (2014) 225 Cal.App.4th 1318, 1344.)  For the
reasons discussed above, Judge DuBois's comments about changed circumstances were
"entirely unnecessary" to his resolution of the initial custody arrangements, and for that
reason those comments have no collateral estoppel effect.

Mother argues that even if the comments had no preclusive effect, Judge
Greenberg was not permitted to enter a ruling inconsistent with Judge DuBois's order
because "one trial court judge may not reconsider and overrule a ruling of another judge."
(*Curtin v. Koskey* (1991) 231 Cal.App.3d 873, 876.)  As this principle is explained in *In
re Alberto* (2002) 102 Cal.App.4th 421, an individual trial judge generally has the
authority to reconsider and change his or her own interim rulings.  "Different policy
considerations, however, are operative if the reconsideration is accomplished by a
different judge.  Accordingly, the general rule is just the opposite:  the power of one
judge to vacate an order made by another judge is limited.  [Citation.]  This principle is
founded on the inherent difference between a judge and a court and is designed to ensure
the orderly administration of justice.  'If the rule were otherwise, it would be only a
matter of days until we would have a rule of man rather than a rule of law.  To affirm the
action taken in this case would lead directly to forum shopping, since if one judge should
deny relief, defendants would try another and another judge until finally they found one
who would grant what they were seeking.  Such a procedure would instantly breed lack
of confidence in the integrity of the courts.' " (*Id.* at p. 427.)

While we acknowledge the general principle, we conclude that Judge DuBois's
comments on the issue of changed circumstances do not constitute the type of "ruling"
that cannot be altered by a subsequent trial judge.[6]  In deciding the binding scope of

---

[6] The general principle is subject to various subtleties and qualifications.  (See,
e.g., *In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1247–1249.)  For purposes

10

Judge DuBois's ruling, a useful analogy can be made to the law of the case doctrine. Under that doctrine, " ' "where, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal and . . . in any subsequent suit for the same cause of action, and this [is true] although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular." ' " (*People v. Murtishaw* (2011) 51 Cal.4th 574, 589.) As suggested in *Murtishaw*, the binding effect of a prior appellate decision under the law of the case doctrine is limited to issues necessary to the disposition of the appeal. "The discussion or determination of a point not necessary to the disposition of a question that is decisive of the appeal is generally regarded as obiter dictum and not as the law of the case." (*Stockton Theatres, Inc. v. Palermo* (1956) 47 Cal.2d 469, 474; see *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 374, fn. 6 [law of the case applies to rules of law " 'necessary to the decision' "].)

The law of the case doctrine is not directly applicable to Judge DuBois's ruling, since the doctrine applies only to matters decided by an appellate court. (*People v. Parker* (2014) 231 Cal.App.4th 1423, 1434, fn. 2; *Harbor Islands Holdings v. Kim* (2003) 107 Cal.App.4th 790, 795.) Yet it stands to reason that a trial judge's ruling should have no *greater* binding effect on subsequent judges in the same case than a comparable ruling by an appellate court. As noted above, under the law of the case doctrine, a prior appellate ruling is binding only as to issues necessary to the court's decision. "Incidental statements or conclusions not necessary to the decision are not to be regarded as authority." (*Simmons v. Superior Court* (1959) 52 Cal.2d 373, 378.) By the same logic, a trial court ruling is binding on subsequent judges only as to those aspects of the ruling necessary to decision on the matter before the initial judge. Judge

---

of this appeal, it is necessary for us only to accept that a ruling of one trial judge in a case cannot be overturned by a different trial judge.

11

DuBois's ruling decided a petition for a custody determination. For the reasons discussed above, the issue of changed circumstances was wholly unnecessary to such a decision. Accordingly, Judge DuBois's comments about changed circumstances were not binding on subsequent judges. Any later decision by Judge Greenberg that might be inconsistent with those comments did not violate the rule prohibiting a trial judge from reconsidering and overruling an earlier ruling by a different trial judge in the same case.

There are strong policy reasons to limit the binding effect of Judge DuBois's ruling in this manner. In general terms, any other rule would bestow inappropriate authority on the first trial judge on the scene. While it is entirely appropriate to preclude later trial judges from reconsidering an earlier judge's ruling on issues properly presented for decision, there is no reason to require subsequent judges to adhere to an earlier judge's expression of views on issues that were not actually before him or her. Such a rule would grant arbitrary and unnecessary authority to judicial musings, as opposed to judicial decisions. As applicable specifically to custody rulings, there are two additional factors. First, the issue of changed circumstances necessarily must be considered in light of all circumstances prevailing at the time of a request to modify the order. To isolate particular circumstances and declare them determinative, as Judge DuBois did, fails to do justice to the doctrine. Further, there is no way for a family court judge to know in advance whether any particular circumstance deemed important at the time a custody order is entered will remain critical, in light of other changing circumstances over time. Under Mother's argument, Judge DuBois's comments would have remained binding for years, notwithstanding the growth of L. and the changing nature of living arrangements and relationships among her family members. Second, there was no effective appellate review available for Judge DuBois's comments regarding changed circumstances. Because those views had no immediate legal or practical effect, it would be unfair, as well as inefficient, to require a party to seek appellate review merely to prevent their application in later proceedings. In addition, because the comments had nothing to do with the issues involved in the custody decision, it is not clear that judicial review would have been available even if an appeal had been taken. Just as the comments constituted

12

an advisory ruling when they were written by Judge DuBois, any appellate consideration of the comments would be advisory in the same way. (See, e.g., *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 110 [declining to give an advisory ruling].) For all these reasons, it would be inadvisable to permit a family court judge to render a binding ruling with respect to changed circumstances prior to their occurrence.

### 2. Judge Greenberg's Finding of No Changed Circumstances

We review a ruling on a request for modification of a custody order for abuse of discretion. (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 14.) "Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child. [Citation.] 'Under this test, we must uphold the trial court "ruling if it is correct on any basis, regardless of whether such basis was actually invoked." ' " (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.)[7]

Judge Greenberg did not abuse her discretion in concluding Mother had failed to demonstrate " 'a significant change of circumstances' indicating that a different custody arrangement would be in [L.'s] best interest." (*Brown*, *supra*, 37 Cal.4th at p. 956.) First, there was substantial evidence to support a finding that the grandparents had not genuinely relocated. Oddly, the grandparents did not submit their own declarations acknowledging and explaining their purported move. While it seems clear the grandparents (with their son) acquired a home in Virginia, that home was claimed by Mother as her own residence in the school application. Mother provided the court with no address for her own home and described it inconsistently in different declarations as less than 15 minutes from the grandparents' home and as 20–30 minutes from their home.

---

[7] Father contends we should also apply the doctrine of implied findings because Mother failed to request a statement of decision. (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267 [explaining doctrine].) A statement of decision, however, is ordinarily available only after trial, not in connection with a ruling on a motion or special proceeding (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 294–296), and Father cites no legal authority suggesting a statement of decision was available in connection with a motion to modify an existing custody order. In any event, we find it unnecessary to invoke the doctrine of implied findings to affirm Judge Greenberg's orders.

13

Further, the grandparents continued to own their Bay Area home and were apparently living there at a time after Mother filed the request, since they had received L. there.[8] All of these factors provide substantial evidence to support a finding the grandparents had not actually changed their residence.

Second, even assuming the grandparents had relocated, Judge Greenberg would not have abused her discretion in concluding that their relocation, viewed in light of all circumstances, did not constitute substantial changed circumstances requiring a reconsideration of L.'s best interests. Because the two parents continued to be widely geographically separated, the school year/summer split of custody arrived at by Judge DuBois remained the most appropriate solution. Yet nothing in the change of circumstances claimed by Mother caused school year custody with her, rather than Father, to be a clearly preferable situation in furthering L.'s best interests. After the relocation, Mother continued to have family members available in the Bay Area to assist her visitation there, while Father had no comparable family or friends in Virginia. In addition, Mother's job in the service continued to offer considerably more opportunity for visits than Father's limited vacation time at his work. Further, the need for Mother to attend an extended training program meant she would either have to move away from the grandparents or undertake a difficult commute, essentially undercutting any benefit from the requested change. In addition, removing L. from the Bay Area for most of the year would take her away from the place that had been her lifetime home. For that reason, the family court could readily have concluded " 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker' " were not outweighed by the claimed change in circumstances. (*Brown*, *supra*, 37 Cal.4th at p. 956.)

---

[8] While Mother's attorney claimed at the hearing to have a lease of the Bay Area home and Virginia utility bills, these were never provided to the court or offered in evidence, and they are not contained in the appellate record. We therefore cannot consider them.

14

Mother argues Judge Greenberg abused her discretion because the grandparents were deeply involved in L.'s life and "[L.]'s proximity to her maternal grandparents was a pivotal factor in the custody decision." An examination of the custody order, however, demonstrates it was the presence of both the grandparents and Mother's sister in the Bay Area that was important in the resolution of custody, and their presence was important not only because of the role played by those family members in L.'s life but also because Mother could stay with them when visiting with L. in California. Following the grandparents' relocation, as discussed above, Mother continued to have some family in the Bay Area. In any event, Judge Greenberg did not abuse her discretion in concluding that the grandparents' role in L.'s life was not so important that their voluntary decision to move away from the Bay Area required an adjustment in custody arrangements.

**B.** *Sanctions*

The purpose of Family Code section 271 is to promote settlement and to encourage cooperation to reduce the cost of litigation. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1176.) " 'Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction.' " (*In re E.M.* (2014) 228 Cal.App.4th 828, 850 (*E.M.*).) "It has been said that section 271 . . . imposes a 'minimum level of professionalism and cooperation,' to effect the policy favoring settlement of family law litigation—and a reduction of the attendant costs." (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1524.) A party seeking sanctions under section 271 need not demonstrate the opposing party's conduct was "frivolous or taken solely for the purpose of delay. Rather, the statute is aimed at conduct that frustrates settlement of family law litigation. Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318.) The party seeking sanctions need not demonstrate actual injury (*E.M.*, at p. 850) or a correlation between sanctioned conduct and specific attorney fees (*In re Marriage of Falcone &*

15

*Fyke* (2012) 203 Cal.App.4th 964, 990). "The only stricture is that the sanction may not impose an unreasonable financial burden on the party sanctioned." (*Ibid.*)

The imposition of sanctions under Family Code section 271 is committed to the sound discretion of the trial court. (*E.M.*, *supra*, 228 Cal.App.4th at p. 850.) Sanction orders under section 271 are reviewed under the abuse of discretion standard. (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532.) "Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225–1226 (*Corona*).) When the family court fails to state the grounds for a sanction award, "we may affirm the court's sanctions order on any ground supported by the record." (*Id.* at p. 1225.) " 'The rationale for this principle is twofold: (a) an appellate court reviews the *action* of the lower court and not the reasons given for its action; and (b) there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct.' " (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 632.)

Applying the requisite deferential standard of review, we cannot say that the trial court's sanctions order was unreasonable. The request was filed against the background of other purportedly litigious conduct by Mother. While we do not attempt to evaluate Mother's prior ex parte requests for judicial intervention, Judge Greenberg had presided over those filed after entry of the custody order. She was therefore generally aware of the nature of the parties' litigation conduct. With respect to the request, Judge Greenberg, as discussed above, could have viewed it as not filed in good faith because the grandparents' move was not genuine. That conclusion alone would support the order of Family Code section 271 sanctions. Even if the judge accepted Mother's factual claims, there was no question Mother was attempting to overturn a permanent custody order less than a year after its entry, before the parties had any meaningful opportunity to implement it. Further, the request was made on the pretense of a change in circumstances that could be viewed as having little material relationship to the reasoning underlying Judge DuBois's custody order. Rather, Mother could have been viewed as attempting to take advantage

16

of a single comment in Judge DuBois's order—his reference to a relocation of Mother's family members, among several other possible changes in circumstances—to overturn a custody ruling with which she was dissatisfied. Because such conduct frustrates settlement and cooperation and drives up litigation costs, it justified the imposition of a sanction under section 271.

Mother argues her request could not have been viewed as frustrating settlement and cooperation because she was merely conforming to Judge DuBois's comments regarding changed circumstances. As noted above, however, Judge Greenberg could have concluded the grandparents' claimed relocation was not genuine. Even if that was not the case, the judge could have viewed Mother's request, which was filed less than a year after entry of the custody order, as an attempt to overturn the order, rather than a good faith attempt to implement the spirit of Judge DuBois's ruling.

Mother also contends Father failed to demonstrate that imposition of the relatively modest sanctions would not be an unreasonable financial burden. Father demonstrated, however, that Mother had reasonably remunerative professional employment and had been able to finance substantial, undoubtedly expensive litigation over the prior two years. This was sufficient to permit the family court to infer that an additional $5,000 sanction would not be an unreasonable financial burden. If Mother wished to challenge her ability to pay the sanction, she could have submitted her own current income and expense declaration (*Corona*, *supra*, 172 Cal.App.4th at p. 1227), but she did not do so.

### III. DISPOSITION

The family court's orders are affirmed. Father may recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

17

_____

Margulies, J.

We concur:

_____

Humes, P.J.

_____

Dondero, J.

A146610

18

Filed 7/12/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANNE H., | A146610 |
| Plaintiff and Appellant, | |
| v. | (San Mateo County Super. Ct. No. 120660) |
| MICHAEL B., | |
| Defendant and Respondent. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| | NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on June 15, 2016, be modified as follows:

On page 17, at the end of the second full paragraph, immediately preceding part III of the opinion, add the following sentence:

Finally, Mother contends for the first time in her reply brief that she was denied due process because the conduct described in Father's declaration in support of the sanctions request concerned past litigation conduct, while the attorney fees for which he sought compensation were incurred in connection with the present request. This argument was forfeited when it was not raised in Mother's opening brief. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218.)

The opinion in the above-entitled matter filed on June 15, 2016, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

1

hereby ordered that the opinion should be published with the exception of part II.B., in the Official Reports pursuant to California Rules of Court, rules 8.1105 and 8.1110.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Dated:


_____
Margulies, Acting P.J.

Trial Court:   San Mateo County Superior Court

Trial Judge:   Hon. Susan Greenberg

Counsel:

Leland, Parachini, Steinberg, Matzger & Melnick, Robert A. Roth for Plaintiff and Appellant.

Law Office of Leslie Ellen Shear, Leslie Ellen Shear and Julia C. Shear Kushner for Defendant and Respondent.