Filed 3/11/22  P. v. Thompson CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B307808 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA156398) |
| v. | |
| PHILLIP NORRIS THOMPSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Kennedy, Judge.  Reversed and remanded with directions.

Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

Appellant Phillip Norris Thompson appeals from the denial of his petition under Penal Code section 1170.95 (Section 1170.95) to vacate his first degree murder conviction. At appellant's 1999 trial, it was undisputed that the perpetrators of the murder also committed a robbery, which was not charged. The jury was instructed on two theories of first degree murder: (1) felony murder, premised on the robbery; and (2) premeditated and deliberate murder. The jury was also instructed on a robbery-murder special circumstance allegation, which -- unlike felony murder at the time -- required findings that appellant at least was a major participant in the robbery and acted with reckless indifference to human life. The jury convicted appellant of first degree murder, but found the robbery-murder special circumstance allegation untrue. We affirmed in a prior, unpublished opinion.

Years later, through the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), the felony murder rule was narrowed by the addition of requirements that the defendant at least have been a major participant in the

2

felony and have acted with reckless indifference to human life.  Appellant filed a petition to vacate his murder conviction under Section 1170.95, alleging he had been convicted of felony murder and could not presently be convicted in light of SB 1437.  After issuing an order to show cause and holding an evidentiary hearing, the superior court denied the petition.  Relying on dictum in our prior opinion, the court reasoned that in light of the jury's not-true finding on the robbery-murder special circumstance allegation, the verdict must have been based on the theory that appellant directly aided and abetted a premeditated murder.

On appeal, appellant contends: (1) the court erred in determining the jury necessarily convicted him under a still-valid theory, rather than independently determining his guilt under such a theory beyond a reasonable doubt; and (2) this court should make such a determination in his favor, rather than remanding the matter to the superior court.  The Attorney General contends the court properly determined the jury convicted appellant as a direct aider and abettor, relying on the jury's not-true finding on the special circumstance allegation and on the related dictum in our prior opinion, the latter of which he argues is binding under the doctrine of law of the case.  He further contends any error was harmless under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), in light of overwhelming evidence of appellant's guilt as a direct aider and abettor.

3

While the court's reliance on our prior opinion was understandable, we conclude it erred in determining the jury necessarily rejected the felony murder theory and convicted appellant as a direct aider and abettor; we further conclude the error was prejudicial. We decline to follow the dictum in our prior opinion, which is not law of the case. Accordingly, we reverse the order denying appellant's petition, and remand to the superior court with directions to hold a new evidentiary hearing.

## BACKGROUND

### A. Underlying Judgment

The People charged appellant with murder (Pen. Code, § 187, subd. (a)), and alleged, inter alia, the murder was committed while appellant was an accomplice in the commission of a robbery (*id.*, § 190.2, subd. (a)(17)).

#### 1. Trial Evidence

In August 1996, Wayne Rainey was found dead in the bedroom of his apartment, with duct tape binding his hands and feet and covering his eyes and mouth. A knife was under his body, and an electric cord was around his neck. A medical examiner determined Rainey died as a result of multiple stab wounds and "probable" strangulation.

The prosecution primarily relied on the testimony of accomplices Akeisha Bowman and Algerina Stewart (codefendants who had pled guilty to voluntary manslaughter), who testified to the following facts. Three

days before the discovery of Rainey's body, Stewart told Bowman that Rainey had raped her. Later that day, appellant and two other accomplices, Herman Farris and Albert Jacobs, went to Bowman's apartment, where they were informed of the rape. Farris asked Bowman for duct tape, which she supplied. That evening, the women went to Rainey's apartment, where they paged appellant's number and informed him of Rainey's address.

Shortly thereafter, appellant, Farris, and Jacobs entered Rainey's apartment. They had a gun and a butcher knife, and they were wearing socks on their hands. They told Bowman and Stewart to get on the floor of the living room, then confronted Rainey in his bedroom. Appellant returned to the living room and pulled out some wires from the entertainment system. One of the men said, "Fuck this, we gonna kill this fool. We gotta kill him." The men duct taped Rainey's eyes, mouth, hands, and feet. Appellant stood guard over Rainey with a knife, while the other two men, assisted by Bowman and Stewart, filled bags with Rainey's possessions and loaded them into Farris's and Rainey's cars. Jacobs then went into Rainey's bedroom, placed a cord around Rainey's neck, and tried to strangle him. Jacobs said "this fool won't die," then stabbed Rainey several times with a knife. Some ten minutes later, all five

accomplices left Rainey's apartment in Farris's and Rainey's cars.[1]

Appellant did not testify or present any evidence relevant to this appeal.

## 2. *Jury Instructions*

The trial court (Judge Jacqueline A. Connor) instructed the jury on two theories of first degree murder, viz., (1) felony murder, premised on the robbery of Rainey; and (2) premeditated and deliberate murder. Pursuant to the parties' agreement, the court declined to instruct the jury on second degree murder. The court delivered instructions on a theory that appellant directly aided and abetted the murder, as well as a theory that he aided and abetted only the robbery, the natural and probable consequence of which was murder.

Pursuant to CALJIC No. 8.80.1, the court instructed the jury that if it found appellant guilty of first degree

---

[1] The testimony of accomplices Bowman and Stewart was corroborated in part by Leslie Spearman and Amet Palacio. Spearman, Rainey's neighbor, testified he saw appellant, Jacobs, Farris, Bowman, and Stewart enter Rainey's apartment on the day of the murder (although Spearman's testimony was not consistent as to whether appellant was a member of this group, or instead was a member of a group of five men who entered Rainey's apartment on an earlier date). Palacio testified he saw appellant, Jacobs, and Farris together at a party the night of the murder, and that all three men left the party around the same time, early enough to commit the murder.

6

murder, it must then determine the truth of the special circumstance allegation that the murder was committed during the commission of a robbery. Before delivering the remainder of CALJIC No. 8.80.1, the court cautioned the jury, "The definition of a murder committed during the commission of robbery is a little different than first degree murder, so you need to look at this carefully." The court proceeded to instruct the jury on the following requirements of the special circumstance allegation, which were not included in the instruction on first degree felony murder: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true [as to that defendant] unless you are satisfied beyond a reasonable doubt that such defendant *with the intent to kill* aided [and] abetted . . . the murder in the first degree, *or with reckless indifference to human life and as a major participant*, aided [and] abetted . . . the crime of Robbery which resulted in the death of a human being, namely Wayne Rainey."[2] (Italics added.)

---

[2]    As noted, the instruction on first degree felony murder did not include these requirements, instead stating: "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of Robbery, *all persons*, who [either] directly and actively commit the act constituting that crime, or who [aid and abet] its commission, are
*(Fn. is continued on the next page.)*

7

### *3. Arguments and Verdicts*

In closing argument, the prosecutor urged the jury to convict appellant of first degree murder in reliance on either the felony murder theory, the theory that appellant directly aided and abetted a premeditated murder, or both. The prosecutor further urged the jury to find true the felony-murder special circumstance allegation, arguing appellant either directly aided and abetted the murder with intent to kill, or was a major participant in the robbery and acted with reckless indifference to human life. Appellant's counsel argued appellant was not present during the robbery and murder, challenging the credibility of accomplices Bowman and Stewart on various grounds.

The jury convicted appellant of first degree murder, but found the robbery-murder special circumstance allegation not true. Appellant was sentenced to imprisonment for 25 years to life.

### *4. Our Prior Opinion*

On appellant's direct appeal, he contended, inter alia, the trial court erred in failing to instruct the jury on second degree murder. Rejecting this contention, we held, "There is no evidence to support a theory of second degree murder, and thus, no error in failing to instruct on that crime. Appellant was *either* guilty of murder on a *felony murder or*

---

guilty of murder of the first degree, *whether the killing is intentional, unintentional, or accidental.*" (Italics added.)

8

premeditated murder theory, or both, or not guilty of the homicide at all." (Italics added.) Although our holding did not require us to determine which of these two theories of first degree murder the jury relied on, we stated, in dicta, "The jury found the special allegation that the murder was committed during the course of a robbery to be untrue. Thus, the verdict of first degree murder must have been based on the theory of premeditation and deliberation." We affirmed the judgment.[3]

### B. Section 1170.95 Petition

In January 2019, appellant filed a petition under Section 1170.95 to vacate his murder conviction, alleging that he had been convicted of felony murder, and that he could not presently be convicted because of SB 1437's changes to the law.[4] At appellant's request, the superior

---

[3] Our prior opinion additionally rejected appellant's contentions that: (1) the court erred in failing to instruct the jury on an additional natural and probable consequences theory premised on assault, rather than robbery, as the target offense; (2) the court delivered an erroneous instruction on reasonable doubt; and (3) there was insufficient evidence to corroborate the testimony of accomplices Bowman and Stewart. Our rejection of these contentions did not require us to determine whether, as we stated in our quoted dictum, the verdict must have been based on the premeditation theory.

[4] In the alternative, appellant alleged he had been convicted under a natural and probable consequences theory. We need not address this allegation, as we conclude appellant's allegation that
*(Fn. is continued on the next page.)*

9

court (Judge Kathleen Kennedy) appointed counsel for him. In opposition to appellant's petition, the prosecution argued that the jury's not-true finding on the robbery-murder special circumstance allegation necessarily reflected the jury's rejection of the felony murder theory. The prosecution quoted our prior opinion's dictum that in light of the not-true finding, "'the verdict of first degree murder must have been based on the theory of premeditation and deliberation.'" In May 2019, the superior court issued an order for the prosecution to show cause why relief should not be granted.

In September 2020, the court held an evidentiary hearing, at which the parties offered no new or additional evidence. Appellant's counsel argued appellant was not guilty under any still-valid theory because he did not act with intent to kill or reckless indifference to human life. The prosecutor argued it was clear from the verdict and the trial evidence that the jury did not rely on the felony murder theory.

The court denied the petition, in reliance on our prior opinion and the jury's not-true finding on the robbery-murder special circumstance allegation. The court reasoned, in relevant part, "[T]he Court of Appeal, in their opinion, says that . . . the jury found this was a first degree murder based upon malice because they rejected the natural and

he was convicted of felony murder was sufficient to entitle him to a determination of his guilt under a theory that remains valid after SB 1437.

10

probable consequences doctrine.  [¶] And there was no felony murder either in this case."  The court concluded appellant was ineligible for relief because he had been convicted under a still-valid theory, viz., direct aiding and abetting. Appellant timely appealed.

## DISCUSSION

### A. Principles

SB 1437 eliminated murder liability under any theory of imputed malice other than the felony murder rule, which it narrowed.  (Pen. Code, §§ 188, subd. (a)(3), 189, subd. (e); Stats. 2018, ch. 1015, §§ 2, 3.)  SB 1437 also enacted Section 1170.95.  (Stats. 2018, ch. 1015, § 4.)  Section 1170.95 permits a defendant who was convicted of murder under any theory of imputed malice (including a felony murder theory), but who could not presently be convicted in light of SB 1437's changes to the law, to petition the sentencing court to have the conviction vacated and to be resentenced on any remaining counts.  (Pen. Code, § 1170.95, subd. (a).)  Where, as here, the court finds the petitioner has made a prima facie showing and issues an order to show cause, the court must hold an evidentiary hearing on the petitioner's eligibility for relief.  (*Id.*, § 1170.95, subds. (c)-(d).)  "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by [SB 1437]."  (*Id.*, § 1170.95, subd. (d)(3).)  If the prosecution fails to meet its

burden, the court must vacate the murder conviction and resentence the petitioner.  (*Ibid.*)

"Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal."  (*People v. Jurado* (2006) 38 Cal.4th 72, 94.)  The doctrine does not apply to dictum.  (See *Anne H. v. Michael B.* (2016) 1 Cal.App.5th 488, 499 ["'The discussion or determination of a point not necessary to the disposition of a question that is decisive of the appeal is generally regarded as obiter dictum and not as the law of the case'"]; *Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 498 ["'It is fundamental that the point relied upon as law of the case must have been *necessarily involved* in the case'"].)

### B. Analysis

We conclude that notwithstanding the dictum in our prior opinion, nothing in the record demonstrates the jury necessarily convicted appellant under a direct aiding and abetting theory, rather than under the first degree felony murder theory on which it also had been instructed.  The verdict of first degree murder did not specify or suggest that the jury rejected the theory of first degree felony murder.  Nor did the jury's not-true finding on the robbery-murder special circumstance allegation.  That finding might have reflected nothing more than a failure of proof regarding the

12

allegation's requirements that appellant at least have been a major participant in the robbery and have acted with reckless indifference to human life.[5] These requirements of the allegation went beyond the requirements of first degree felony murder at the time of trial, as the trial court emphasized by cautioning the jury to pay careful attention to the allegation's differences from first degree murder. Thus, notwithstanding the not-true finding, the verdict of first degree murder might have been based on the felony murder theory.[6]

For the reasons stated above, we decline to follow the dictum in our prior opinion that in light of the not-true finding on the special circumstance allegation, "the verdict of first degree murder must have been based on the theory of premeditation and deliberation." As explained, this determination was not necessary to our rejection of appellant's claim on appeal that the jury should have been

---

[5]  The Attorney General acknowledges "the not true finding on the special circumstance allegation . . . may have only reflected that the jury was unsure about appellant's exact role."

[6]  The cases on which the Attorney General relies are distinguishable. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1050, 1055-1059, review granted Sep 23, 2020, and cause remanded Nov. 17, 2021, S263939 [jury was not instructed on felony murder]; *People v. Stevenson* (2018) 25 Cal.App.5th 974, 981-984 [same]; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 333-336 [jury necessarily found intent to kill in convicting defendant of conspiracy to commit murder]; *People v. Medrano* (2021) 68 Cal.App.5th 177, 182-185 [same].)

13

instructed on second degree murder. That determination was based on our observation that appellant was either guilty of murder on a felony murder *or* premeditated murder theory, or both, or not guilty of homicide at all. The dictum is not binding under the law of the case doctrine. (See *Anne H. v. Michael B.*, *supra*, 1 Cal.App.5th at 499; *Gyerman v. United States Lines Co.*, *supra*, 7 Cal.3d at 498.) While the trial court's reliance on our language was understandable, we conclude it erred in determining the jury necessarily rejected the felony murder theory and convicted appellant as a direct aider and abettor.

Contrary to the Attorney General's contention, this error was prejudicial even assuming, arguendo, the *Watson* standard applies. (See *People v. Sandoval* (2015) 62 Cal.4th 394, 422 [under *Watson* standard, error is reversible if there is a reasonable probability -- meaning more than an abstract possibility -- that the appellant would have obtained a more favorable result absent the error].) The record does not enable us to determine how the superior court, had it sat as an independent factfinder, would have evaluated the evidence of appellant's guilt under a still-valid theory. The evidence at trial raised substantial issues of credibility, as the prosecution relied primarily on the testimony of accomplices Bowman and Stewart, whose credibility was challenged on various grounds. The superior court did not purport to evaluate their credibility, or any other evidence. On this record, any conclusion as to what the court would have found as an independent factfinder is speculative.

14

Finally, we decline appellant's invitation to usurp the role of factfinder by making our own determination of his guilt under a still-valid theory. Section 1170.95 contemplates that the evidence will be evaluated by the superior court in the first instance. (See Pen. Code, § 1170.95, subd. (d)(3).) The statute also provides the prosecution the right to offer new or additional evidence. (*Ibid.*) Although the prosecution has not yet exercised this right, it may choose to exercise it on remand. Accordingly, we will remand to the superior court with directions to hold a new evidentiary hearing.

## DISPOSITION

The order denying appellant's petition for resentencing under Penal Code section 1170.95 is reversed.  The matter is remanded to the superior court with directions to hold a new evidentiary hearing on appellant's eligibility for relief from his murder conviction.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

16