Filed 11/14/22 Marriage of Stott CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of JOSHUA and GRISEL STOTT. | |
| JOSHUA STOTT, | E078373 |
| Appellant, | (Super.Ct.No. FAMSS1900041) |
| v. | OPINION |
| GRISEL STOTT, | |
| Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Candice Garcia-Rodrigo, Temporary Judge.  (Pursuant to Cal. Const., art VI, §21.)  Affirmed.

Joshua Stott, in pro. per., for Appellant.

Westover Law Group and Andrew L. Westover for Respondent.

1

Appellant Joshua Stott (Husband) appeals from the denial of a Request for Order (RFO) filed by him seeking an order terminating all visits between his two children, B.S. and A.S. (hereinafter, Minors) and their mother, respondent Grisel Stott (Wife), and appointment of minor's counsel. Husband alleged that Wife had been involved in a domestic violence incident in front of Minors. The trial court denied the RFO without hearing live testimony from any witnesses.

In this appeal, Petitioner contends the trial court (1) used an improper standard in denying the RFO; (2) abused its discretion by denying the RFO without hearing testimony pursuant to Family Code section 217[1]; and (3) abused its discretion by refusing to appoint minor's counsel pursuant to section 3150..

## FACTUAL AND PROCEDURAL HISTORY

### A. CUSTODY JUDGMENT

Husband and Wife have two children together, B.S. (born November 2009) and A.S. (born March 2013). After a hearing, on June 1, 2021, the trial court made final orders as to custody. The custody order has not been made part of the record on appeal. Based on information in the pleadings, Husband and Wife were granted 50/50 physical and legal custody.

### B. REQUEST FOR ORDER

On October 8, 2021, Husband filed his RFO. He sought an order from the trial court modifying visitation and appointment of minor's counsel. He also sought a

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

temporary emergency order. The trial court denied any emergency temporary order and the matter was set for a hearing.

Husband sought to modify the court order entered on June 1, 2021. Husband requested that no visitation occur between Wife and Minors before they could be interviewed about a domestic violence incident involving Wife and her sister (Aunt). In addition, he sought to have counsel appointed for Minors to ascertain what had occurred while they were in Wife's custody.

Husband provided a declaration. A.S. had recorded a video of Wife discussing the custody hearing directly with her, which Husband argued was in violation of the "court's order." The video would be available for the hearing. Wife threatened to take away Minors' extracurricular activities when she would become upset or inconvenienced. This caused Minors extreme stress. Husband and Wife had problems working out the court's order as to custodial time. Husband declared, "It has always been believed that [Wife] fails to comply with the court's order not to drink alcohol within 24 hours of the visits, because the children frequently come back from their visits reporting that their 'mom got drunk and drove them in the car.'"

Husband declared that on Monday, October 4, 2021, Minors were dropped off at school by Wife. They immediately asked their teachers if they could go to the office. Once in the office, they reported being stressed, unfocused and scared. Minors claimed they had not slept all weekend while at Wife's house. Minors also reported to office staff that Wife had taken them to a party and was drunk at the party. Other partygoers had to intervene when she attempted to drive them home. Their aunt took Wife's keys and had

3

someone else take them home. Once they arrived home, Aunt and Wife got into an altercation. Minors had to lock themselves in the bathroom because they were scared. They believed they heard gunshots. When Minors came out of the bathroom, they observed that Wife had a black eye. Husband claimed B.S. had texted an older half-sibling, Jackie, while they were hiding during the domestic violence incident and Jackie showed Husband the text messages.

Husband confronted Wife by texting her that he knew that she had been drunk. He claimed to have seen a video of her drinking on social media and Husband's dad had received a "drunk text" from her. Wife did not admit to drinking. Husband concluded his declaration, "Based on all of the above reasons, I respectfully request that the Court grant my request ex parte and cease visitation with [Wife] pending appointment of minor's counsel and that the children be interviewed by the Family Court Services. I am fearful that my kids are in danger. The children have reported that they are scared to tell me anything because [Wife] tells them that they will go back to court. I believe that with minor's counsel they will have a voice and feel like they are finally being heard and these issues can be addressed without it appearing as if I am looking for issues. I really always hoped [Wife] would do the right thing by our children."

Attached to the RFO were several exhibits. Exhibit 1 was a text message in Spanish that had not been translated. Exhibit 2 was a text message with the name Jackie on the top. An exchange by text message occurred, as follows:

4

"Where are you"

"Where's [A.S]

        "We're in the room

"Moms room?

        "I'm to[o] scared to come out

"Me to[o]

"I thought you left

        "No

"Where's [A.S]

        "On her bed

"And mom?

        "Sleeping."

Exhibit 3 was a text message to Wife from Husband: "I know you got in a fight with [Aunt] this past weekend and the kids are terrified from hearing and seeing all that went with it. And I'm aware of this drunk text you sent my dad at 1:00[a.m.] also about not living with [Aunt] anymore and stuff. The kids are really traumatized right now in returning so soon. Let's just let things cool off this week and let the kids stay here this week and resume everything back to normal next week." Wife responded, "Josh . . . I am not going to argue with you because it's really pointless. . . . [Aunt] is leaving in the morning on vacation for two weeks, nothing is wrong, so don't try to drag this out . . . I am pick[ing] up my kids as usual . . . period." Husband continued to text her, claiming

5

that something was wrong at her house. He claimed that Minors had not slept all weekend and that she had failed to do A.S.'s homework with her. He insisted that Minors had to lock themselves in her bathroom because they were scared "that night." Wife responded, "There is nothing wrong." Husband responded, "Something is definitely wrong if you don't think that whatever went down was okay for the kids to witness and be around." Wife twice texted back, "good night." Husband texted, "I never said you're not a parent but be an adult and admit your mistakes. You keep trying to act like everything is fine but the kids are suffering from what you're exposing them too. I wish you would think about them and their well being instead of what kind of image you have. Be a safe environment for them so you can be 'involved.' " Wife responded, "You need to calm down . . . your if anything causing all this distress." Exhibit 4 was a copy of photograph, which was too dark to see.

In the memorandum of points and authorities, Husband argued that California Rules of Court, rule 5.240(b) provides that a court may appoint counsel to represent a child's best interests in the trial court if asked by a "party," "attorney for a party," a "relative," or a mediator. Appointment of minor's counsel was appropriate in this case. There had been issues regarding the violation of court orders by Wife and minor's counsel could help to alleviate the stress that Minors were feeling. Minors felt unsafe in Wife's home because of her frequent drinking and partying. Minors felt they were not being heard.

## C. RESPONSIVE DECLARATION TO RFO

Wife filed a responsive declaration. She received a message from Husband's attorney that suggested she voluntarily suspend her custodial time with Minors. Wife surmised that after the custody trial, Husband was unhappy with the result. He was continually interrogating Minors as to what was occurring in Wife's home. On October 2, 2021, she and Minors went with Aunt and Aunt's boyfriend to a party involving extended family. Aunt's boyfriend was driving that night as she and Aunt had planned to enjoy alcoholic beverages along with food and cake. She was not "irresponsibly intoxicated," and never would be when caring for Minors. When they all arrived back home, Minors went to sleep. Wife admitted she and Aunt got into a loud argument that led to "pushing and shoving between ourselves." Wife and Aunt reconciled in the morning. They admitted they were both under a lot of stress. Wife insisted that she and Aunt did not abuse alcohol or drugs. Minors were never in danger. The argument was just a "bump in the road." Wife, Aunt and Aunt's boyfriend were all willing to testify about the events of that night.

Wife also declared she had been residing with Aunt in order to save money. She had spent "substantial sums in attorney's fees" for the custody trial. She owned a home but had to rent it out to save money. Wife had mistakenly believed that she texted her parents that night, and not Husband's father. She wanted to request a loan from her parents so that she and Minors could move back into her home. The message went to Husband's father, which caused Husband to interrogate Minors as to what was occurring in Wife's home while they were in her custody.

7

Wife attached to the responsive declaration the message she received from Husband's lawyer. It notified her of the ex parte hearing requested by Husband "because of the incident that have been going on between you guys." It also stated, "And then also the one this weekend when you and [Aunt] got in a fight uh in front of the kids and you were drinking And try to drive. . . . And what we're requesting is no visits and until the kids can be interviewed from family court services. And also that a lawyer get appointed to the kids so that there's no more back and forth, it's called miners Council." (*Sic.*)

D.    <u>HEARING</u>

The RFO was heard on November 22, 2021. Wife and Husband were present with counsel. The trial court found that there had been a recent trial on custody and visitation. There were final orders made after the trial. Based on the final custody and visitation orders, the trial court felt, from a procedural stance, that the RFO required Husband to make a prima facie showing there had been a material or substantial change in circumstances since the custody order. The trial court's tentative ruling was to deny the RFO for failure to show a prima facie case of a material change in circumstances because there had been no "competent evidence presented to support the request for change in custody."

Husband's counsel argued that the RFO and Wife's declaration showed that there had been domestic violence in Wife's home in front of Minors. Wife admitted to pushing and shoving between her and Aunt in front of Minors. The text message from Jackie, who was Wife's older daughter from a prior relationship, showed she was afraid and

locked herself in the bedroom. Domestic violence issues were not addressed at the custody trial.

The trial court stated that the statements were hearsay. They were not based on Husband's personal knowledge. Counsel for Husband again referred to the text message from Jackie, which the trial court stated was hearsay. Wife had admitted to the incident. The trial court disagreed that Wife admitted to pushing and shoving in front of Minors. Husband's counsel responded that Minors were in her care. Husband's counsel insisted the text messages between Wife and Husband showed there was an incident. Minor's counsel needed to be appointed in order to determine what had occurred. There were no prior issues of domestic violence that had already been addressed by any court.

Wife's counsel admitted Wife got into an argument with Aunt but they had restored their relationship. Wife admitted she had texted Husband's father that she was upset and wanted to move out of sister's home. Wife's counsel argued, "The true facts behind this situation is this is a father—ex-husband—who is very upset and disappointed with the ruling that came down on the *Montenegro* hearing regarding the children which resulted in an equal timesharing plan. This is the first opportunity he has had to use anything to manipulate the circumstances into a request for a change of custody." Wife's counsel argued it was disruptive for Minors.

Wife's counsel advised the trial court that Minors went to a school run by Husband's mother and they lived with Husband's mother so there was "far too much influence . . . put on the children with [Husband's] family." Notwithstanding, Wife was happy with the 50/50 custody arraignment with Husband and wanted no changes.

9

Husband's counsel argued circumstances had changed since the custody order based on Wife trying to drive drunk with Minors. Husband's counsel argued that Wife admitted to domestic violence in her responsive declaration. Counsel for Husband complained that the trial court was not taking the domestic violence issues seriously.

The trial court ruled, "The court, based on the review of the record, shows that a full day of court trial was held June 2021. The request for order does not show material or substantial change in circumstances from that *Montenegro* order that came out of the court trial. His declaration contains no direct personal knowledge. It is all hearsay. There was no request for a [F]amily [C]ode section 217 hearing to present additional evidence. [¶] There is only one alleged incident, based on mother's admission, of a verbal argument that resulted in pushing and shoving, which was outside the physical presence of the children, although they may have been in bed. The actual effect on the children of what occurred on that date, again, being an isolated incident that did not result in any type of arrest or any further harm—or any harm to the children—is based on father's hearsay statements, which the court cannot consider as competent evidence pursuant to [C]ode of [C]ivil [P]rocedure 2015.5." The RFO was denied.

Husband filed a notice of appeal on January 14, 2022, from the denial of the RFO under Code of Civil Procedure sections 904.1, subdivisions (a)(2), and (a)(3) through (a)(13).

## DISCUSSION

Husband essentially contends the trial court erred by denying his RFO. First, he insists that the trial court abused its discretion by using the wrong standard in determining

10

whether to modify visitation and denying appointment of counsel. Second, he claims the trial court should have conducted a section 217 hearing despite his failure to request such hearing. Third, the trial court had an obligation to appoint minor's counsel.

We initially note that Wife has argued in the respondent's brief that we should find Husband's claims have been waived and forfeited for failing to appropriately cite to the record, and for providing only legal conclusions and no legal authority. We reject these arguments. While Husband has failed to provide an adequate record on appeal, which we will address *post*, his opening brief presents cogent legal argument supported by legal authority and appropriately cites to the record.

## A.    CHANGE IN CIRCUMSTANCES

Husband insists the trial court erred by requiring him to show a significant change of circumstances for a change in visitation and appointment of minor's counsel. Husband contends the proper standard for a change in visitation and appointment of minor's counsel as requested in the RFO was whether it was in Minors' best interests, not a significant change in circumstances. The trial court abused its discretion by denying the RFO.

Section 3087 provides, "An order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interest of the child requires modification or termination of the order. If either parent opposes the modification or termination order, the court shall state in its decision the reasons for modification or termination of the joint custody order." However, the California Supreme Court has found, "Once the trial court has entered a final or

11

permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining' that custody arrangement. [Citation.] In recognition of this policy concern, we have articulated a variation on the best interest standard, known as the changed circumstance rule, that the trial court must apply when a parent seeks modification of a final judicial custody determination. [Citations.] Under the changed circumstance rule, custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest. [Citation.] Not only does this serve to protect the weighty interest in stable custody arrangements, but it also fosters judicial economy." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956; see also *Anne H. v. Michael B.* (2016) 1 Cal.App.5th 488, 496-497.)

" 'The changed-circumstance rule is not a different test, devised to supplant the statutory test, but an adjunct to the best-interest test. It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256.) "The burden of showing changed

12

circumstances is on the party seeking a modification of the custody order." (*Anne H. v. Michael B.*, *supra*, 1 Cal.App.5th at pp. 496-497.)

Here, Husband has not provided this court with the final custody order that was entered by the trial court on June 1, 2021. Although Husband commences his opening brief with language that "The court entered a *Montenegro* order concerning custody and visitation issues after a trial on June 1, 2021," the transcript of the hearing and final order is not before this court. (Fn. omitted.) The trial court in reviewing the RFO stated on the record that it had reviewed the custody order, and it was a final custody order. This court must presume that the prior order was a final custody order as the trial court stated it was a final custody order, and Husband has not presented any evidence on appeal to refute such determination. Accordingly, any change in custody would require a showing that there was a significant change in circumstances.

"[T]he changed circumstance rule does not apply when a parent requests only a change in the parenting or visitation arrangement not amounting to a change from joint custody to sole custody, or vice versa. Instead, the trial court considers a request to change the parenting or visitation arrangement under the best interests of the child standard." (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1072.) "[T]he changed circumstance rule does not apply when an order does not change custody but only alters a parenting schedule." (*Id.* at p. 1077.)

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best

13

interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)

Husband claims he was only seeking a change in visitation, which does not require a showing of a significant change in circumstances. We conclude the request to terminate all visits between Minors and Wife was in fact a request to change custody.

In *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, the Court of Appeal held the trial court erred by applying the changed circumstance rule to deny a father's request to alter a visitation schedule to obtain one extra day with the child each week and an additional overnight visit. He and the mother shared joint legal and physical custody. (*Id.* at pp. 1373, 1376, 1379.) The court concluded the changed circumstance rule did not apply to requests for modification of visitation not amounting to a change in custody. (*Id.* at pp. 1379, 1382.) In reaching this conclusion, the court noted "the California Supreme Court has repeatedly discussed the changed circumstance rule in cases involving requests to modify custody, where granting the request would remove custody from one parent and give it to the other parent." (*Id.* at p. 1379.) The Court of Appeal stated, "[a]lthough [the father]'s proposed changes would alter the parenting schedule, in terms of potential instability for [the child], they were not on par with a request to change physical custody from sole to joint custody, or vice versa." (*Id.* at p. 1382)

Here, Husband's request was on "par" with a request to change custody because he was asking the court to stop all visitation between Minors and Wife. According to the record before this court, Wife and Husband shared 50/50 legal and physical custody. The

impact of the change in visitation would essentially grant Husband full physical custody of Minors. Although identified as "visitation," the change would essentially deprive Wife of any custody of Minors. The trial court could reasonably conclude that Husband must show changed circumstances.[2]

Based on the record before this court, we cannot reverse the trial court's determination that there were no changed circumstances. Initially, by failing to provide the court order from June 1, 2021, this court cannot consider if this was a change in circumstances. The reviewing court does not presume on appeal that there was error; the judgment or order is presumed correct. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) An appellant has the burden of overcoming that presumption by providing an adequate appellate record demonstrating the error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

Although Husband's counsel stated that no prior domestic violence was considered in reaching the custody order on June 1, 2021, we simply do not have any background on Wife. It is impossible for this court to determine whether the trial court erred by finding no change in circumstances when we are not aware of the state of circumstances when the final custody order was entered on June 1, 2021.

Moreover, Husband provided text messages that were allegedly between Minors and their older sister to support that they were scared and hiding in the bathroom because

---

[2] Husband appears to contend that he was only seeking a temporary cessation of visits while Minors were being interviewed. He has provided no authority that a "temporary" change from 50/50 shared custody to no custody does not require a showing of a significant change in circumstances.

Wife and Aunt were having an argument. However, the trial court could not confirm the messages in fact involved these parties. Further, it could not rely on inadmissible hearsay in reaching its conclusion on change of circumstances. (See *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 837.) The evidence before the trial court was that Wife admitted she and Aunt had an argument while Minors were in their bedroom. The issue was resolved the following morning. There was no evidence that Minors witnessed the incident. The trial court could conclude that despite the incident, it was not a "significant" change in circumstances warranting a change in custody.

B.      FAMILY CODE SECTION 217

Husband insists the trial court should have ordered a section 217 hearing to have Minors provide live testimony at a hearing.

Section 217, subdivision (a) provides, "At a hearing on any order to show cause or notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties." Subdivision (c) of section 217 provides, "A party seeking to present live testimony from witnesses other than the parties shall, prior to the hearing, file and serve a witness list with a brief description of the anticipated testimony. If the witness list is not served prior to the hearing, the court may, on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing."

16

Section 217, subdivision (a) requires a trial court, absent limited exceptions, to receive relevant live testimony at a hearing on a family law motion, including a postjudgment request for order. (*In re Marriage of Swain*, *supra*, 21 Cal.App.5th at pp. 839-840 & fn. 7; Cal. Rules of Court, rule 5.113(a).) Where a party fails to request oral testimony, section 217 does not preclude the court from proceeding without it. (*In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1127-1129, 1132.)

Husband did not file and serve a witness list prior to the RFO hearing. Further, once the trial court stated at the hearing that there was no request for a section 217 hearing, Husband did not request a continuance to provide a witness list. Such failure to request live testimony foreclosed the trial court from considering whether there may be good cause not to receive live testimony. (See *Chalmers v. Hischkop* (2013) 213 Cal.App.4th 289, 313.)[3] The trial court did not abuse its discretion by considering the RFO without hearing live testimony based on Husband's failure to comply with section 217.

Husband states that it was clear from the RFO that he wanted to call Minors to testify. He insists it would have been redundant to file a witness list. Section 217 states

---

[3] " 'Good cause' under the statute is explicated in the CRC: 'In addition to the rules of evidence, a court must consider the following factors in making a finding of good cause to refuse to receive live testimony under Family Code section 217: [¶] (1) Whether a substantive matter is at issue—such as . . . spousal support . . . ; [¶] (2) Whether material facts are in controversy; [¶] (3) Whether live testimony is necessary for the court to assess the credibility of the parties or other witnesses; [¶] (4) The right of the parties to question anyone submitting reports or other information to the court; [¶] . . . and [¶] (6) Any other factor that is just and equitable.' " (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 604.)

that a party "shall, prior to the hearing, file and serve a witness list." (§ 217, subd. (c).) California Rules of Court, rule 5.113, subdivision (b)(5) provides that the trial court can consider prior to accepting live testimony from a nonparty if the party has complied with section 217. Providing a witness list prior to the hearing was mandatory and could not be substituted with the trial court—and Wife—having to imply from the pleadings who Husband would have testify at the hearing. Moreover, it is not clear from the pleadings that Husband wanted Minors to testify in court. In the RFO, he stated he wanted Minors interviewed by Family Court Services. Husband did not request that Minors provide live testimony in the courtroom. Husband did not make a proper request to the trial court to present live testimony and did not request a continuance once the trial court stated that Husband had not made such request prior to the hearing. Husband's claim that the trial court erred by denying the presentation of live testimony does not require reversal or remand to the trial court.[4]

C.      <u>APPOINTMENT OF MINOR'S COUNSEL</u>

Husband contends, pursuant to section 3150, subdivision (a), the trial court should have appointed minor's counsel to interview and assist Minors. The trial court's denial, without any findings on the record, must be reversed.

Section 3150, subdivision (a) provides that, "If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to

---

[4] Since we conclude that Husband failed to comply with the provisions of section 217 to present live testimony, we need not address Husband's further claims regarding testimony of a child witness.

18

represent the interests of the child in a custody or visitation proceeding, provided that the court and counsel comply with the requirements set forth in Rules 5.240, 5.241, and 5.242 of the California Rules of Court." California Rules of Court, rule 5.240 lists the factors the trial court should consider in deciding whether to appoint counsel, including, but not limited to, whether the best interest of the child appears to require independent representation; one of the parents appears incapable of providing a stable, safe and secure environment; and the dispute involves allegations of physical, emotional, or sexual abuse or neglect of the child. California Rules of Court, rule 5.241 addresses payment of counsel and rule 5.242 details the eligibility, education, training and experience requirements for appointment.

We review the refusal to appoint minor's counsel for an abuse of discretion. (See *Wendland v. Superior Court* (1996) 49 Cal.App.4th 44, 50 & fn. 7.)

" ' "A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." ' " (*A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1281.) " '[W]here the issues are sufficiently important, as in a child custody case, formal findings of fact and conclusions of law are

required upon the request of a party, regardless of the nature of the proceedings.' " (*City and County of San Francisco v. H.H.* (2022) 76 Cal.App.5th 531, 545.)[5]

In ruling on the RFO, the trial court did not state its reasons on the record for denying the request to appoint minor's counsel. Husband never objected to the trial court's ruling and did not request a written ruling.

Because there is no statement of decision, we presume the trial court made all factual findings necessary to support the order. (*City and County of San Francisco v. H.H.*, *supra*, 76 Cal.App.5th at p. 545.) We therefore determine whether the implied finding that appointment of minor's counsel was not in Minors' best interests is supported by substantial evidence.

The trial court's decision was supported by substantial evidence. There was no admissible evidence that Minors had suffered any harm. There was a final custody order in place that found it was in the Minors' best interests that Wife and Husband have 50/50 physical and legal custody. The trial court found there was no change of circumstances and no live testimony would be heard—including from Minors—because Husband had not requested a section 217 hearing. The trial court did not abuse its discretion by denying the request to appoint minor's counsel.

---

[5] While Code of Civil Procedure section 632 contemplates that a statement of decision is only required when there has been a trial, there are exceptions for special proceedings. (*City and County of San Francisco v. H.H.*, *supra*, 76 Cal.App.5th at pp. 544-545.)

**DISPOSITION**

The trial court's denial of Husband's RFO is affirmed.  Wife shall recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

RAMIREZ _____
P. J.

RAPHAEL _____
J.

21