Filed 7/15/24  Marriage of Stubbs CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of APRIL and MICAH STUBBS. | H050909<br>(Santa Clara County<br> Super. Ct. No. 21FL002119) |
| APRIL STUBBS,<br><br>    Respondent,<br><br>    v.<br><br>MICAH STUBBS,<br><br>    Appellant. | |

## I.  INTRODUCTION

Appellant Micah Stubbs (father) and respondent April Stubbs (mother) dissolved their marriage in April 2022.  They share legal and physical custody of minor children from the marriage.  In this appeal from a December 22, 2022 postjudgment order, we understand father, a self-represented litigant in this court, to contend that the trial court committed reversible error by (1) giving mother the authority to enroll one of their children in therapy, and (2) stating that no significant or material change of circumstances would be necessary in the future to modify orders regarding the children's extracurricular activities.

For reasons that we will explain, we will affirm the December 22, 2022 order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Our summary of the factual and procedural background of this case is drawn from the limited record on appeal and father's opening brief, since no respondent's brief was filed by mother.

**A.** *The Marital Settlement Agreement and Judgment*

Father and mother married in 2012, and three children were born during the marriage. Father and mother separated in 2021. A judgment of dissolution, which incorporated the parties' marital settlement agreement and stipulation for judgment, was filed on April 22, 2022.

The parties have joint custody of their three children. The parties' marital settlement agreement contains several provisions regarding custody relevant to this appeal.

First, the parties' marital settlement agreement contains a meet and confer requirement regarding certain issues. Specifically, the agreement states in relevant part: "5.3 Joint Legal Custody. In exercising joint legal custody, the parties will share in the responsibility and discuss in good faith matters concerning the health education, [sic] and welfare of the children. The parties agree that they must meet, confer, and agree in writing to any and all decisions on the following matters regarding any of the children: [¶] . . . [¶] 5.3.2 Beginning or ending psychiatric, psychological, or other mental health counseling or therapy; [¶] 5.3.3 Participation in extracurricular activities; [¶] 5.3.4 Selection of a doctor, dentist or other health professional . . . ." (Underscoring omitted.)

Second, the parties' marital settlement agreement contains a "[n]o interference" provision, which states: "5.5 No interference. The parties agree not to interfere with the schedule of the other parent without that parent's consent. Neither parent will schedule activities for the children during the other parent's scheduled parenting time without the other parent's prior written agreement." (Underscoring omitted.)

Third, the parties' marital settlement agreement provides that they "will equally share in the cost of mutually agreed upon extra-curricular activities for the children."

Fourth, the parties' marital settlement agreement sets forth specific extracurricular activities that the children may engage in for a limited period of time. Relevant here, the agreement states in part: "5.10 Extra-Curricular Activities. The parties agree that Mother has the option to take the following specified children to the following specified extra-curricular activities during Father's custodial time during the calendar year of the signing of this document. . . ." The parties signed the agreement in 2022.

**B.** *Mother's Request for an Order Changing Child Custody*

In July 2022, mother, who was a self-represented litigant at the time, filed a request for an order changing child custody. She checked a box on the preprinted form indicating that she was seeking sole legal custody. In the request, she stated that father was "withholding children from recommended medical treatments" and "restricting and isolating [them] from school and extracurricular activities." She requested that "these become orders or, alternatively, increased physical custody to [her] in order to facilitate." It appears from the record that the parties filed several documents in relation to mother's request, including a declaration by mother, a responsive declaration by father, and a memorandum of points and authorities by father. None of these documents is included in the record on appeal.

**C.** *Initial Hearing in October 2022 Regarding Mother's Request*

On October 27, 2022, a hearing was held regarding mother's request. (No reporter's transcript of the hearing is contained in the record.) In the trial court's findings and order after hearing, the court denied mother's request without prejudice. The court stated that mother "ha[d] not demonstrated a significant change in circumstances warranting a change to the custody and visitation orders currently in effect." The court also denied without prejudice a request by father for coparenting counseling.

3

**D.** *Post-Mediation Hearing in December 2022*

The parties apparently participated in mediation regarding mother's request for an order among other matters. In a subsequent November 2022 written statement to the trial court, father requested that the parties continue to share legal and physical custody, that they maintain their "2-2-3" visitation schedule, that the court deny mother's request for an order allowing her to take the children to events on father's custodial time, and that the parties be ordered to attend "coparent counseling." Father reported that the parties' "communication and cooperation since dissolution" had improved and that they had "been working together to select some new extracurriculars and all of the children's medical appointments have been met."

On December 1, 2022, the trial court held a post-mediation hearing. Mother appeared in person, father appeared remotely, and both parties were represented by counsel at the hearing. Relevant to this appeal, mother's counsel contended that the children had been missing some events that occurred during father's custodial time and that mother wanted to assist in the children's attendance. The court explained that it had "already addressed [mother's] request to revisit issues that she wanted changed within the [marital settlement agreement], and the Court already denied the request, [because] there was no material change in circumstance." Mother's counsel indicated that a "change in circumstances" would occur at the end of the year, when the provision in section 5.10 of the parties' marital settlement agreement, allowing mother to take the children to activities during father's custodial time, would expire. Mother's counsel believed that upon expiration of the provision, father would object to mother facilitating transportation to the extracurricular activities. Mother's counsel indicated that mother was also requesting a therapist for one of the children.

Father's counsel responded that father had attempted, and was willing, to work on an agreement regarding extracurricular activities. Father had also requested coparenting counseling to address issues regarding any medical appointments and to address some

issues he raised regarding the physical welfare of the children.  The trial court ordered coparent counseling after mother indicated her agreement to it.

On the issue of whether a section in the marital settlement agreement regarding extracurricular activities expired at the end of the year, father's counsel stated that "in order to change any terms of the [marital settlement agreement]," "there would have to be a material change in the extracurricular activities that the children currently engage" in. Father's counsel indicated that the parties would be able to agree on activities for the children for the upcoming year and beyond.

The trial court indicated that it was inclined to find that section 5.10 regarding extracurricular activities remained in effect only during the calendar year that the marital agreement was signed.  The court stated, "[T]he Court finds that if there had been a request to make a change during the year that the document was signed, which was 2022, material change in circumstance or a significant change in circumstances would have been required, but going forward beginning in 2023, that is not the standard.  The parties simply do not have an agreement as to extracurricular activities.  The parties are encouraged to meet and confer and further discuss concerns about the extracurriculars."

Regarding mother's request for a therapist for one of the children, mother's counsel indicated that the child had conveyed to mother that the child was "struggling" with the divorce.  According to mother's counsel, mother had "reached out to [father] to request therapy" for the child, but father had "declined."

The trial court asked father's counsel whether there was any objection to the therapy.  Father's counsel responded, "[Father] indicates to me that -- again, similarly to co-parent counseling to the extent therapy is necessary for [the child] -- we are not entirely sure that it's necessary at this point, or it's going to be another opportunity for [mother] to try make sure to upend [father's] custodial time. . . .  [¶]  [Mother's] motion was primarily trying to control [father's] time; so I'm concerned that [mother's] request for therapy for the . . . child and then likely subsequently scheduling that time during

5

[father's] time is going to create more issues for scheduling and shuffling the children to and from the therapy. [Father] is certainly not opposed to anything if it's in the best interest of the child, but this is the first that we are hearing of it."

After acknowledging the "2/2/3 schedule" for the children, the trial court stated as follows: "At this time, the Court is going to order that Mom may enroll [the child] in therapy, but the therapy must occur during Mom's custodial time. I don't know whether she needs it either, but at this point, I don't find it would be harmful to her, and so that addresses your client's concern and may address concerns that [the child] is having and struggles that [the child] is having with the conflict." At the end of the hearing, the court ordered mother's counsel to prepare the order after hearing.

Counsel for each party thereafter exchanged correspondence expressing disagreement with the language of the proposed order regarding extracurricular activities and whether a change in circumstance was required. Father's counsel also indicated that although "the court ordered that all therapy sessions scheduled by [mother] take place during [mother's] custodial time, [father] would still like to actively participate in [the child's] care," including "be[ing] involved in the initial appointment." In a subsequent letter, father's counsel stated that father "has the right to be involved and should be involved given the court ordered mental health therapy for [the child]." Father's counsel stated, however, that this did "not correlate to a carte blanche rule that all treatments and activities for all three children that [mother] desire[s] to enroll them in fall on [father's] time." Father's counsel stated that father's "parenting time (as [mother's]) should be uninterrupted and respected" and that father "certainly wants to be involved with [the child's] mental health therapy."

**E.** *December 22, 2022 Written Order*

On December 22, 2022, the trial court filed its findings and order after hearing regarding mother's July 2022 request for an order. Relevant to this appeal, the court ordered as follows: (1) "Therapy for [the child]: Mother may enroll [the child] in

6

therapy. Any sessions that [the child] will attend shall take place during Mother's custodial time"; and (2) "Material/Significant change of circumstances: The court did not find a significant change in circumstances during the hearing on October 27, 2022. However, in light of provision 5.10 in the parties['] Marital Settlement Agreement (Filed April 22, 2022) regarding extra-curricular activities and its termination '*during the calendar year of the signing of this document*,' as of January 1, 2023, that provision expires and no significant/material change of circumstances shall be necessary to modify orders regarding the children's extracurricular activities." (Underscoring omitted.)

Father filed a notice of appeal regarding the December 22, 2022 order. (See *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1376–1378 (*Enrique M.*) [postjudgment order denying modification of parenting schedule and change in school appealable under Code Civ. Proc., § 904.1, subd. (a)(2)].)

### III.    DISCUSSION

Mother has not filed a respondent's brief. Her failure to do so "means that we 'decide the appeal on the record, the opening brief, and any oral argument by the appellant' [citations], examining the record and reversing only if prejudicial error is shown. [Citations.]" (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)

### A.      *Order for Therapy*

The trial court's December 22, 2022 order after hearing states the following regarding therapy for one of the children: "Mother may enroll [the child] in therapy. Any sessions that [the child] will attend shall take place during Mother's custodial time." We understand father to contend on appeal that the trial court erred in making this order because (1) mother did not "obtain Father's agreement to select a therapist and begin mental health therapy," (2) the court failed to make a finding regarding a significant change in circumstances, (3) the court failed to make a finding that therapy was necessary or apply the best interest standard, and (4) the court may not order therapy for an indefinite duration.

7

We are not persuaded by father's arguments for the following reasons.

First, the parties' marital settlement agreement requires the parties to "meet, confer, and agree in writing to any and all decisions" regarding "[b]eginning . . . psychiatric, psychological, or other mental health counseling or therapy." At the December 1, 2022 hearing, mother's counsel stated that the child had conveyed to mother that the child was "struggling with the parents['] divorce," and that when mother "reached out to [father] to request therapy" the request was "declined." As the parties were unable to reach an agreement on the issue of therapy for the child, the trial court did not err in making an order thereafter.

Second, the trial court was not required to find a significant change in circumstances before making the order. " 'In making an initial custody determination, the court must make an award that is in accordance with the best interests of the child.' [Citations.] . . . [T]he changed circumstance rule is an adjunct to the best interest test in the context of requests to modify custody: '. . . It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements. [Citations.]' " (*Enrique M.*, *supra*, 121 Cal.App.4th at pp. 1378–1379.)

However, "[t]he California Supreme Court has repeatedly discussed the changed circumstance rule in cases involving requests to modify *custody*, where granting the request would remove custody from one parent and give it to the other parent. [Citations.]" (*Enrique M.*, *supra*, 121 Cal.App.4th at p. 1379.) Consequently, in *Enrique M.*, an appellate court determined that where the parents had joint legal and physical custody, the father's "requests to alter the parenting schedule and [the child's] school situation did not amount to a request to modify the joint custody arrangement."

8

(*Id.* at p. 1382.)  The appellate court reasoned that "[a]lthough [the father's] proposed changes would alter the parenting schedule, . . .  they were not on a par with a request to change physical custody from sole to joint custody, or vice versa." (*Ibid.*)  The appellate court therefore "conclude[d] that the trial court erred in applying the changed circumstance rule to [the father's] requests." (*Ibid.*)

While the appellate court in *Enrique M.* addressed the changed circumstance rule specifically in relation to physical custody, the appellate court in *In re Marriage of Furie* (2017) 16 Cal.App.5th 816 (*Furie*) reached a similar conclusion regarding the limited application of the changed circumstance rule in relation to legal custody.  In *Furie*, the father, who shared legal custody with the mother, contended that the trial court abused its discretion in awarding the mother sole authority over the children's orthodontic care.  (*Id.* at pp. 820, 826.)  The appellate court observed that legal custody "encompasses 'the right and the responsibility to make the decisions relating to the health, education, and welfare of a child,' " which "obviously includes orthodontic care." (*Id*. at p. 826.)  The appellate court explained that the trial court's order did "not amount to a change of legal custody" because the "father continue[d] to share joint legal custody with mother. [Citation.]  The only change is that mother now has sole authority concerning orthodontic care." (*Ibid.*)  The appellate court reasoned:  "While this issue has more frequently arisen in the context of physical custody and visitation, we see no reason to require a 'changed circumstances' test when a modification amounts to something less than a change of legal custody.  We hold, therefore, that the appropriate standard for ordering a modification in parenting authority that does not rise to the level of a change in legal custody—as with physical custody—is the best interests of the child standard, regardless of any alleged change in circumstances." (*Id.* at p. 827, italics omitted.)

In this case, the trial court's order authorizing mother to enroll the child in therapy did not amount to a change of physical or legal custody.  Both father and mother continued to have joint physical custody and joint legal custody.  As a result, the trial

9

court was not required to make a finding regarding a change in circumstances before making its order.

Third, father failed to preserve his appellate contention that the trial court erred by failing to find that therapy was necessary for the child or in the child's best interest.

The California Supreme Court has instructed that " '[a]n appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1; accord, *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002.) Thus, a party's failure to object to an error in the trial court results in a forfeiture of that claim of error on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) A party also may fail to preserve an issue for appeal by acquiescing in the claimed error in the trial court proceedings. (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 179 (*Petropoulos*).)

In this case, the record reflects that father failed to preserve his objection due to his "apparent acquiescence" in the entry of the order he now challenges as erroneous. (*Petropoulos*, *supra*, 91 Cal.App.4th at p. 179.) At the December 1, 2022 hearing, the trial court specifically asked whether father had "any objection" to therapy for the child. In response, father's counsel never objected on the grounds that therapy was not necessary or not in the child's best interest. In fact, father's counsel did not take a position on this point. Instead, father's counsel expressed "concern[]" about therapy presenting "another opportunity for [mother] to try to make sure to upend [father's] custodial time" and mother "likely . . . scheduling that [therapy] during [father's] time."

10

In response to the only "concern[]" expressed by father's counsel, the court ruled that mother "may enroll [the child] in therapy, but the therapy must occur during [mother's] custodial time." Father's counsel did not further object at the hearing.

Father argues that he did not waive or forfeit his appellate contention, citing letters that his counsel sent to the trial court or to mother's counsel after the hearing. None of the letters, however, contains an objection by father to the therapy, let alone an objection on the grounds that the therapy is not in the child's best interest. Father thus fails to demonstrate that he preserved this issue for appeal. (See *Furie*, *supra*, 16 Cal.App.5th at p. 827 [affirming order granting mother's authority over children's orthodontic care and requiring father to pay for half, where "[a]lthough the trial court did not expressly find that the modification was in [the children's] best interest, father did not object or note the omission"].)

Fourth, regarding father's contention that the trial court's order must be reversed based on Family Code section 3190[1] or because it violates father's rights to due process, father has similarly forfeited these contentions by failing to raise them below.

Even if the contentions were not forfeited, father fails to persuasively demonstrate that reversal is warranted based on section 3190 or the rights to due process. Section 3190 states in relevant part: "(a) The court *may require* parents . . . involved in a custody or visitation dispute, and the minor child, *to participate* in outpatient counseling with a licensed mental health professional, or through other community programs and services that provide appropriate counseling, including, but not limited to, mental health or substance abuse services, *for not more than one year*, provided that the program selected has counseling available for the designated period of time, if the court finds both of the following: [¶] (1) The dispute between the parents[ or] between the parent or parents and the child . . . poses a substantial danger to the best interest of the child. [¶]

---

[1] All further statutory references are to Family Code.

(2) The counseling is in the best interest of the child." (*Id.*, subd. (a)(1), (2), italics added.)

In this case, the trial court did not "require" the parents or the child "to participate" in therapy. (§ 3190, subd. (a).) Instead, the court stated in its written order that mother "*may* enroll [the child]" in therapy. (Italics added.) The order was thus limited to giving mother certain authority. As the court did not order the child to participate in therapy for an indefinite duration as asserted by father, he fails to establish a violation of due process and his reliance on *In re Marriage of Matthews* (1980) 101 Cal.App.3d 811 and *In re Chantal S.* (1996) 13 Cal.4th 196 do not advance his argument. (See *Matthews*, *supra*, at pp. 817–818 [holding that a parent's due process rights were violated by an order "requiring that [the parent] undergo involuntary psychiatric therapy of an unspecified duration"]; *Chantal S.*, *supra*, at p. 209 [holding that § 3190 did not apply in the context of juvenile court dependency termination orders because, "assuming the protections afforded by Family Code section 3190 are needed to satisfy due process concerns in the context of litigation in the family court, the distinctive features of dependency jurisdiction in the juvenile court render unnecessary the additional safeguards of Family Code section 3190 in the context of juvenile court orders terminating dependency jurisdiction"].)

Lastly, we understand father at oral argument to raise the issue of participating in the child's therapy. We observe that the trial court's order does not address father's participation in therapy with the child. If father wishes to participate in therapy with the child, we leave that issue to the parties and the trial court.

**B.** *Whether a Change of Circumstances Is Required in the Future to Modify Orders Regarding Extracurricular Activities*

As we have recited above, the trial court stated in its December 2022 findings and order after hearing: "Material/Significant change of circumstances: The court did not find a significant change in circumstances during the hearing on October 27, 2022.

However, in light of provision 5.10 in the parties['] Marital Settlement Agreement (Filed April 22, 2022) regarding extra-curricular activities and its termination '*during the calendar year of the signing of this document*,' as of January 1, 2023, that provision expires and no significant/material change of circumstances shall be necessary to modify orders regarding the children's extracurricular activities." (Underscoring omitted.)

On appeal, father contends that this "order" by the trial court should be reversed. Father argues that other provisions regarding extracurricular activities in the marital settlement agreement remain in effect, such as the provisions requiring the parties to meet and confer regarding the children participating in extracurricular activities, prohibiting the parties from scheduling the children's activities during the other parent's scheduled time without an agreement, and requiring the parties to share the cost of the children's activities. Father contends that "[w]hile any of these provisions remain in effect, as they all do, a significant and material change of circumstance shall continue to be necessary to modify the court's existing final orders regarding the children's extracurricular activities."

We determine that father fails to establish that the trial court made an order requiring reversal. On this point, we find *Anne H. v. Michael B.* (2016) 1 Cal.App.5th 488 (*Anne H.*) instructive. In *Anne H.*, the trial court issued a permanent custody order in which the father was awarded physical custody of the child during the school year, while the mother was awarded physical custody in her home out-of-state during the summers. (*Id.* at p. 491.) The court's order indicated that the relocation of mother's family members, who then lived near father in the Bay Area, would constitute changed circumstances warranting a new analysis of the custodial timeshare. (*Id.* at pp. 491, 493.) Subsequently, mother filed a request to modify the custody order based on the relocation of her parents. (*Id.* at p. 491.) The request was heard by a different judge, who found no changed circumstances and denied the request. (*Id.* at pp. 491-492.)

13

The appellate court affirmed the order, finding that the statement in the earlier custody order "specifying changed circumstances requiring a reconsideration of custody arrangements was not binding on subsequent judges." (*Anne H.*, *supra*, 1 Cal.App.5th at p. 492.) The appellate court explained that the first judge's comments in the earlier order "about a change in circumstances were unnecessary to his decision . . . ." (*Id.* at p. 498.) As a consequence, "there [was] no reason to require subsequent judges to adhere to an earlier judge's expression of views on issues that were not actually before him or her." (*Id.* at p. 500.) Further, because the first judge's "views [in the earlier order] had no immediate legal or practical effect" and "constituted an advisory ruling when they were written by [the first judge], any appellate consideration of the comments would be advisory in the same way." (*Id.* at pp. 500-501.)

Similarly, in this case, the trial court's statement in its December 2022 order – that "as of January 1, 2023, [section 5.10 of the parties' marital settlement agreement] expires and no significant/material change of circumstances shall be necessary to modify orders regarding the children's extracurricular activities" – was "unnecessary to [the court's] decision" on the issues properly before the court with respect to mother's July 2022 request. (*Anne H.*, *supra*, 1 Cal.App.5th at p. 498.) Because the court's statement regarding matters that might arise after January 1, 2023 "had no immediate legal or practical effect" and "constituted an advisory ruling when they were written by [the court], any appellate consideration of the comments would be advisory in the same way." (*Id.* at pp. 500-501.) We therefore decline to issue an advisory ruling regarding whether a "significant/material change of circumstances shall be necessary to modify orders regarding the children's extracurricular activities" beginning January 1, 2023. The parties in the future may raise in the trial court the issue, as may be relevant, of whether a change of circumstances is necessary.

## IV.  DISPOSITION

The December 22, 2022 postjudgment order is affirmed.

14

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.

_____
BROMBERG, J.

*Stubbs v. Stubbs*
**H050909**